## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSEPH CASTILLO,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>　　　　　　　Defendant. | **REPORT AND RECOMMENDATION**<br><br>Case No.  2:14-cv-00637-RJS-EJF<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Joseph Castillo asks the Court to remand the final agency decision denying his Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401–434.  The Social Security Administration ("SSA") determined that Mr. Castillo did not qualify as disabled within the meaning of the Social Security Act.  (Admin. R. Doc. 19, ECF No. 5, certified copy tr. of R. of admin. proceedings:  Joseph Castillo [hereinafter Tr. __].)  Having carefully considered the parties' memoranda, the record, and the relevant legal authorities, the undersigned[1] RECOMMENDS the District Court affirm the Commissioner's decision because substantial evidence in the record supports the Administrative Law Judge's ("ALJ's") determination of Mr. Castillo's severe impairments at step two and the ALJ's evaluations of Dr. Ward's opinion and Mr. Castillo's residual functional capacity ("RFC").[2]

---

[1] On November 12, 2014, District Judge Robert J. Shelby referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 8.)

[2] Pursuant to DUCiv Rule 7-1(f), the undersigned finds oral argument unnecessary and makes its recommendation based on the written memoranda.

# I.  PROCEDURAL HISTORY

On September 26, 2011, Mr. Castillo filed for DIB alleging January 1, 2011 as the onset date of his disability.  (Tr. 19.)  The Regional Commissioner denied Mr. Castillo's claim on December 6, 2011, (tr. 60–68, 80–85), and again upon reconsideration on December 28, 2011, (tr. 69–77, 87–89).  At Mr. Castillo's request, an ALJ held a hearing on March 29, 2013 (the "Hearing").  (Tr. 32–52.)  On April 10, 2013, the ALJ issued a written decision denying Mr. Castillo's claim (the "Decision").  (Tr. 19–31.)  On June 7, 2013, Mr. Castillo requested the Appeals Council review the Decision.  (Tr. 14.)  The Appeals Council denied Mr. Castillo's request on July 18, 2014, after considering the results of a pulmonary function test, administered after the ALJ rendered his decision, because the test did not provide a basis to change the Decision.  (Tr. 1–5.)  Therefore, the Decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g).  *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court . . . .").

# II.  FACTUAL BACKGROUND

## A.  *Medical Records*

Prior to his alleged onset date, Mr. Castillo's medical records reflect the following.  On May 19, 2009, Mr. Castillo went to Intermountain-Healthcare Sports Clinic on referral from his primary care physician, Scott H. Beckstead, D.O., for right knee pain.  (Tr. 217.)  After reviewing X-rays, the doctor opined Mr. Castillo had moderate osteoarthritis with a likely degenerative meniscus and gave Mr. Castillo a depomedrol injection.  (Tr. 219.)  Over the next few weeks, Mr. Castillo returned for euflexxa injections in his right knee.  (Tr. 220–22.)

On October 12, 2010, Mr. Castillo presented to the Columbia Lakeview Hospital emergency room (the "Lakeview ER") with pain in his right wrist that the doctor attributed to gout.  (Tr. 256–57.)

Mr. Castillo alleges his disability status commenced on January 1, 2011.  (Tr. 19.)  Mr. Castillo continued to present to the Lakeview ER with gout in his joints through 2011.  (Tr. 246–47 (May 3, right wrist); 240–42 (July 12, left elbow); 235–36 (September 21, left ankle).)  These attacks occurred after Mr. Castillo stopped taking his medication.  (Tr. 235, 240, 246.)  During a September 2011 visit, Mr. Castillo weighed about 340 pounds and had a body mass index ("BMI") of 42.5.  (Tr. 235.)  The doctor counseled Mr. Castillo about fall prevention, medical problems, weight loss, and diet.  (Tr. 236.)

On June 9, 2011, Mr. Castillo went to the First Med Industrial Clinic following a workplace accident at a school remodeling site where he had worked the previous day.  (Tr. 46–47, 223–24.)  Mr. Castillo reported pain in both shoulders.  (Tr. 223.)  Although Mr. Castillo had full strength and range of motion, direct palpation of his thoracic paraspinal muscles caused him major discomfort.  (Tr. 224.)  Jaime Padilla, PA-C, ordered X-rays of Mr. Castillo's thoracic spine, which showed severe arthritis and bone spurs on the vertebrae and "2 Facet rotations to T-spine" according to Mr. Padilla.  (Tr. 223–25.)  Mr. Padilla assessed Mr. Castillo as having osteoarthritis, facet rotations, and thoracic contusion/strain.  (*Id.*)  Mr. Padilla put Mr. Castillo on light work duty, limiting him to lifting twenty-five pounds with no repetitive bending or stooping.  (Tr. 224, 227.)  Mr. Padilla also referred Mr. Castillo to physical therapy three times a week and told Mr. Castillo to follow up in a week.  (Tr. 227.)

The following week, Mr. Castillo complained about his upper back and left shoulder, still feeling pain with palpation to his paraspinal muscles.  (Tr. 231.)  Mr. Padilla modified Mr.

Castillo's light work duty, allowing occasional repetitive bending or stooping and prohibiting overhead work.  (Tr. 228.)  Mr. Padilla told Mr. Castillo to follow up in a week.  (*Id.*)  At Mr. Castillo's physical therapy evaluation the following week, the physical therapist noted Mr. Castillo felt tenderness with "superficial palpation across the upper trapezius along the spine." (Tr. 232.)

Mr. Castillo followed up on his left shoulder pain the next week.  (Tr. 230.)  Although Mr. Castillo still felt pain with palpation to his paraspinal muscles, he rated his pain as a two out of ten.  (*Id.*)  Mr. Padilla released Mr. Castillo to regular work duty, (tr. 229), which consisted of exerting fifty to one-hundred pounds of force occasionally, twenty-five to fifty pounds of force frequently, and/or ten to twenty pounds of force constantly to move objects, (tr. 232).

On January 11, 2012, Mr. Castillo saw Dr. Beckstead for the first time in three years for knee and back pain and received a prescription painkiller.  (Tr. 267-268.)  Dr. Beckstead told Mr. Castillo to return if his condition worsened or did not improve.  (Tr. 268.)

On July 2, 2012, Mr. Castillo went to the Lakeview ER with gout in his right wrist and left ankle after running out of medication again.  (Tr. 281–83.)

On August 28, 2012, Mr. Castillo presented to the Lakeview ER with constant dyspnea and chest pain.  (Tr. 273.)  Mr. Castillo reported his dyspnea "worsened by exertion and cough." (*Id.*)  The doctor found Mr. Castillo's breath sounds normal and noted no respiratory distress. (Tr. 274.)  The doctor ordered chest X-rays, which showed "mild, diffuse interstitial changes, slightly worse in the lung bases," giving the impression of "[m]ild interstitial lung disease of uncertain age and etiology."  (*Id.*)  The X-ray also showed "moderate degenerative changes of the mid and lower thoracic spine."  (*Id.*)  The doctor opined Mr. Castillo had pneumonia.  (Tr. 275.)

-4-

On August 30, 2012, Mr. Castillo went to see Douglas S. Kasteler, M.D., who substituted for Dr. Beckstead that day, following up on the pneumonia diagnosis and reporting continued pain.  (Tr. 294.)  Dr. Kasteler indicated Mr. Castillo presented as a "[v]ery large morbidly obese male short of breath but O2 sats = 95% on RA" with "decreased breath sounds" in his left lung base.  (*Id.*)  Dr. Kasteler opined Mr. Castillo had pneumonia with pleuritis.  (*Id.*)

On April 22, 2013, Mr. Castillo had a pulmonary function test done at Columbia Lakeview Hospital.  (Tr. 332.)  A doctor's note indicates the test left Mr. Castillo tired, even with long rest periods between the different parts, to the point where he could not finish one part of the test.  (Tr. 333.)  The test produced mostly normal results but showed Mr. Castillo had "alkalemia secondary to a respiratory alkalosis with hypoxemia."  (Tr. 332.)

### B.  Disability Evaluations

On November 27, 2011, Mr. Castillo completed an adult function report, listing his back, knees, and gout as his main complaints.  (Tr. 150–57.)  Although those problems limit the frequency with which he can bend over, Mr. Castillo reported  still making his own meals sometimes, mowing the lawn every two weeks with periodic help, using public transportation, and shopping  for his own food and personal items.  (Tr. 150–53.)  Mr. Castillo stated he watches television during the day, enjoys fishing even when he "can't walk to [sic] far," and spends summers with his family.  (Tr. 151, 154.)  Mr. Castillo also indicated he could lift thirty pounds and walk two blocks without resting despite his problems.  (Tr. 155.)  Mr. Castillo reported he had no problem sitting.  (*See id.*)

On December 6, 2011, a state disability examiner summarized Mr. Castillo's activities of daily living from his adult function report and determined that Mr. Castillo could do light work.  (Tr. 64, 68.)  The examiner found Mr. Castillo only partially credible because objective evidence

did not support Mr. Castillo's statements, especially because Mr. Castillo returned to heavy work in June 2011, six months after his alleged onset date.  (Tr. 65.)  Mr. Castillo completed a disability report a week and a half later stating his knee pain and gout worsened and that it takes longer to get dressed and do household chores.  (Tr. 186, 189.)  On December 28, 2011, another state disability examiner affirmed the original December 6, 2011 decision after Mr. Castillo did not submit any new medical records.  (Tr. 72.)

On February 14, 2012, Mr. Castillo stated, "[p]ain makes it hard to do everything" in another disability report.  (Tr. 197.)

On December 13, 2012, Mr. Castillo sent a Medicaid disability addendum to the Department of Workforce Services ("DWS").  (Tr. 324–27.)  Mr. Castillo listed his back, knees, and gout as his disabling conditions.  (Tr. 324.)  Mr. Castillo reported that he "do[es] what [he] can" around the house, enjoys fishing, and rides the bus.  (Tr. 326.)

On January 15, 2013, Raymond Ward, M.D., Ph.D., examined Mr. Castillo at the request of DWS to determine if Mr. Castillo had any disability that prevented him from working.  (Tr. 302, 315.)  Dr. Ward performed a current examination, evaluating Mr. Castillo's shortness of breath, spinal osteoarthritis, obesity, and depression, concluding Mr. Castillo's obesity constituted his biggest problem.  (Tr. 302–03.)

Dr. Ward noted Mr. Castillo had "[n]o increased work of breathing" but did "not do well with exertion," "breathing somewhat hard" walking up and down the hall.  (Tr. 305.)  Dr. Ward opined Mr. Castillo's shortness of breath, whether from asthma or obesity, "would be fairly limiting to what kind of jobs he could do[;] it would have to be something with fairly minimal exertion."  (Tr. 302.)  Dr. Ward also noted Mr. Castillo could "take a few steps on his toes and a few steps on his heels" but could "do only a minimal squat" because "if he does deeper he is too

heavy to get back up." (Tr. 305.)  Additionally, Dr. Ward found Mr. Castillo had some pain with palpation over his lumbar spine and musculature.  (*Id.*)  However, Mr. Castillo had negative straight leg raises on both sides and no edema.  (*Id.*)  Dr. Ward opined Mr. Castillo's spinal osteoarthritis in his low back "would limit him from any jobs where he had to do much lifting or physical labor but would not stop him from doing any sedentary work."  (Tr. 302–03.)  Finally, Dr. Ward stated Mr. Castillo's obesity contributed to his shortness of breath and back pain.  (Tr. 303.)  At that time, Mr. Castillo weighed 394 pounds and had a BMI of 54.3.  (Tr. 302.)

In his report to DWS, Dr. Ward listed "spinal osteoarthritis" and "[s]hort of breath/asthma" as Mr. Castillo's diagnoses.  (Tr. 322.)  Dr. Ward then documented his opinions from his examination with various disclaimers indicating he did not have much objective evidence.  (*E.g.*, tr. 316 ("Today is my first visit and I have no previous records—so all I have is his history"); 317 ("I have no access to the Xrays or previous work-up"); 319 (Mr. Castillo "has never had formal pulmonary function tests to know for sure").)  Dr. Ward recommended Mr. Castillo have gastric bypass surgery and a pulmonary function test.  (Tr. 323.)  Mr. Castillo followed up on January 29, 2013 to ensure Dr. Ward sent his report to DWS, which he had.  (Tr. 311.)

### C.  Hearing Testimony

At the Hearing, Mr. Castillo reiterated his complaints about his back, knees, shoulder, and gout and stated that when his gout flares up he goes to the Lakeview ER because he has no insurance.  (Tr. 39–43.)  Mr. Castillo testified about constant pain in his lower back "[j]ust above the tailbone probably almost to the center of [his] back."  (Tr. 40.)  Moving around or lying down alleviates his back pain but "[t]rying to do stuff in a hurry like mow [his] lawn or do [his] yard work" aggravates his back pain.  (Tr. 40–41.)  However, Mr. Castillo's little brother takes

care of the yard.  (Tr. 41.)  Mr. Castillo also testified that his back and knees prevent him from walking around much, causing him to gain weight.  (Tr. 39.)  At the time of the Hearing, Mr. Castillo weighed 390 pounds.  (*Id.*)

Mr. Castillo stated he could sit for fifteen to twenty minutes at a time, stand for fifteen to twenty minutes at a time, and walk for fifteen to twenty minutes at a time but had trouble going up and down stairs.  (Tr. 44–46.)  Mr. Castillo also stated he could comfortably lift and carry twenty pounds for a short distance.  (Tr. 45.)  Mr. Castillo did not think he could do his past work "[a]nd feel right about it with the company" because he could not work quickly and construction required fast workers.  (Tr. 46.)  Mr. Castillo worked briefly in June 2011 for a demolition company but he fell and injured himself.  (*Id.*)  After Mr. Castillo's injury, his boss assigned him to holding a two-inch hose on a pile of dirt for asbestos containment.  (Tr. 47; *see also* tr. 180 (describing functional requirements of the job).)  One day, Mr. Castillo's company did not call him back so Mr. Castillo assumed he no longer had a job.  (Tr. 47.)  Mr. Castillo told the ALJ that "if [he] knew [himself] that [he] could go out and do the type of work that [he's] done for years, [he] would go out and do it."  (Tr. 48.)

The ALJ asked Mr. Castillo if he could do a "light type job" where he would not have to "lift more than 20 pounds . . . occasionally [and] 10 pounds frequently" or "be on [his] feet all day [but] probably sit a couple hours in the course of an eight hour day."  (Tr. 48–49.)  Mr. Castillo did not answer the question directly; rather, he stated he did not have the skills to work with computers.  (Tr. 49.)  When the ALJ gave the "somewhat more extreme example" of working as a WalMart greeter, Mr. Castillo thought he could do that.  (*Id.*)  In response, the ALJ commented, "I think that's pretty sedentary though."  (*Id.*)

### III.  STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of a final decision of the Commissioner of the SSA.  A court reviews the Commissioner's decision to determine whether substantial evidence in the record supports the Commissioner's factual findings and whether the Commissioner applied the correct legal standards.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).[3]  The Commissioner's findings shall stand if supported by substantial evidence.  42 U.S.C. § 405(g).  Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence.  *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).  The standard "requires more than a scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084 (citation omitted).  "Evidence is not substantial 'if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'"  *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)).

Although the reviewing court considers "whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,'" it "will not reweigh the evidence or substitute [its] judgment for the Commissioner's."  *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).  Instead the court "review[s] only the *sufficiency* of the evidence," *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (citation omitted).  The court does not have to accept the Commissioner's findings mechanically, but must "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the

---

[3] Courts apply the same analysis in determining disability under Title II and Title XVI.  *House v. Astrue*, 500 F.3d 741, 742 n.2 (8th Cir. 2007) (citation omitted).

substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence," and the court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (alteration in original) (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the reviewing court may reverse where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (citation omitted).

## IV.  ANALYSIS

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Moreover, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. 20 C.F.R. § 404.1520(a)(1). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or combination of impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;
(4) The impairment prevents the claimant from performing his past work; and
(5) The claimant possesses a RFC to perform other work in the national economy considering his age, education, and work experience.

See 20 C.F.R. § 404.1520(a)(4) (outlining the five-step sequential evaluation); Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987) (citations omitted) (same). The claimant bears the initial burden of establishing his disability in the first four steps. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989) (citation omitted). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. Id. (citation omitted).

The ALJ evaluated Mr. Castillo's claim through step five, making the following findings of fact and conclusions of law with respect to Mr. Castillo:

1. "[Mr. Castillo] meets the insured status requirements of the Social Security Act through March 31, 2014." (Tr. 21.)
2. "[Mr. Castillo] has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date (20 CFR 404.1571 et seq.)." (Id.)
3. "[Mr. Castillo] has the following severe impairments: (1) Morbid obesity resulting in a body mass index in excess of 50; (2) Gout; (3) Status post remote right shoulder repair with references to spurring in his left shoulder; and (4) Osteoarthritis of the knees (20 CFR 404.1520(c))." (Id.)
4. "[Mr. Castillo] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (Tr. 22.)
5. "After careful consideration of the entire record, the undersigned finds that [Mr. Castillo] has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b)." (Tr. 23.)

-11-

6.     "[Mr. Castillo] is unable to perform any past relevant work (20 CFR 404.1565)." (Tr. 26.)

7.     "[Mr. Castillo] was born on July 24, 1960 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563)." (*Id.*)

8.     "[Mr. Castillo] has at least a high school education and is able to communicate in English (20 CFR 404.1564; Exhibit 4E/1, 3)." (*Id.*)

9.     "Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not [Mr. Castillo] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart 2, Appendix 2)." (*Id.*)

10.    "Considering [Mr. Castillo's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Mr. Castillo] can perform (20 CFR 404.1569 and 404.1569(a))." (*Id.*)

11.    "[Mr. Castillo] has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision (20 CFR 404.1520(g))." (Tr. 27.)

In short, the ALJ concluded Mr. Castillo had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and thus could perform a significant number of jobs in the national economy from the alleged onset date through the date of Decision.  (Tr. 23–27.)

In support of his claim that the Court should remand the Commissioner's decision, Mr. Castillo argues the ALJ erred by:  (1) failing to classify Mr. Castillo's spinal osteoarthritis as a severe impairment at step two; (2) improperly evaluating the opinion of an examining physician, Dr. Ward; and (3) failing to support his determination of Mr. Castillo's RFC with substantial evidence.[4]  (Pl.'s Opening Br. 2, ECF No. 9.)

### A. Findings at Step Two

Mr. Castillo argues the ALJ erred when he did not find Mr. Castillo's spinal osteoarthritis a severe impairment at step two.  (Pl.'s Opening Br. 6–7, ECF No. 9.)  The undersigned disagrees.

---

[4] By making only these arguments in his opening brief, Mr. Castillo waives any additional challenges to the Decision.  *See Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1182 n.51 (10th Cir. 2005) (citation omitted) (waiving argument claimant did not first raise in her opening brief).

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that significantly limits his ability to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c).  A claimant must establish both that the condition constitutes a medically determinable impairment and that the impairment significantly limits his ability to do basic work activity.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.1521(a).  Medical evidence must demonstrate that a physical or mental impairment lasts for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1508, 404.1509; *Barnhart v. Walton,* 535 U.S. 212, 217 (2002).  If the claimant does not have a severe medically determinable impairment or combination of impairments, the claimant will not qualify as disabled.  20 C.F.R. § 404.1520(a)(4)(ii); *see also Casias v. Sec'y of Health & Human Servs;* 933 F.2d 799, 801 (10th Cir. 1991) ("If it is determined that a claimant is or is not disabled at any point in the analysis, the review stops.").

The ALJ found Mr. Castillo's spinal osteoarthritis did not qualify as a medically determinable impairment.  (Tr. 22.)  In reaching his determination, the ALJ explained, "the record contains no medically acceptable evidence to support the presence of a medically determinable impairment regarding his spine."  (*Id.*)  The ALJ noted "that the claimant's treatment providers included spinal osteoarthritis (as well as a thoracic contusion resulting in a strain) based on the claimant's subjective statements rather than imaging."  (*Id.*)  "To establish a medically determinable impairment, the claimant must have medical evidence consisting of signs, symptoms, and laboratory findings;" a claimant's statement of his symptoms alone does not suffice.  20 C.F.R. § 404.1508; SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996) ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and

-13-

laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.").[5]

The record supports the ALJ's conclusion.  Mr. Castillo asserts that his lower back pain disables him.  (Tr. 40.)  No objective medical evidence in the record shows spinal osteoarthritis in Mr. Castillo's lower back.  Mr. Castillo points to two X-rays of his spine, one on June 9, 2011 and one on August 28, 2012, as evidence of his spinal osteoarthritis.  (Pl.'s Opening Br. 7, ECF No. 9; *see* Pl.'s Reply Br. 7–8, ECF No. 17.)  However, the ALJ found, and the record shows, both X-rays focus on Mr. Castillo's thoracic spine, not on his lower back (lumbar spine), making them irrelevant to the issue about which Mr. Castillo complains–lower back pain.  (Tr. 22, 40, 225, 274.)  Therefore, the undersigned RECOMMENDS the District Court find substantial evidence supports the ALJ's finding at step two that Mr. Castillo's spinal osteoarthritis did not qualify as a medically determinable impairment.

### B. Evaluation of Dr. Ward's Opinion

Mr. Castillo argues the ALJ erred by according little weight to Dr. Ward's opinion.  (Pl.'s Opening Br. 7–9, ECF No. 9; Pl.'s Reply Br. 2–4, ECF No. 17.)  The undersigned disagrees.

An ALJ must evaluate every medical opinion.  20 C.F.R. § 404.1527(c).  When determining what weight to assign each medical opinion, the ALJ must consider the following factors:  (1) the nature of the medical source's relationship with the claimant, (2) the supportability of the opinion by the record, (3) the consistency of the opinion with the record, (4) the medical source's specialization, and (5) any other factors that tend to support or contradict

---

[5] Although "social security rulings do not carry the force and effect of law," the Tenth Circuit defers to them unless "'they are plainly erroneous or inconsistent'" with the Act, because "'they constitute Social Security Administration interpretations of its own regulations and the statute which it administers.'"  *Andrade*, 985 F.2d at 1051 (quoting *Walker v. Sec'y of Health & Human Servs.*, 943 F.2d 1257, 1259–60 (10th Cir. 1991)).

the opinion.  20 C.F.R. § 404.1527(c).  To reject a medical opinion, the ALJ must provide

"'specific, legitimate reasons' for his decision." *Drapeau v. Massanari*, 255 F.3d 1211, 1213

(10th Cir. 2001) (quoting *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)).  However, the

ALJ's decision need not discuss explicitly all of the factors in weighing a medical opinion.  *See*

*Oldham*, 509 F.3d at 1258 (stating that a lack of discussion of each factor does not prevent the

court from according the decision meaningful review).

      Mr. Castillo argues the ALJ should have given Dr. Ward's opinion great or controlling

weight.  (Pl.'s Opening Br. 7–8, ECF No. 9; Pl.'s Reply Br. 3, ECF No. 17.)  However, an ALJ

can never give an opinion of a non-treating doctor, like Dr. Ward, controlling weight.

*Stonestreet v. Astrue*, No. 5:12CV111, 2014 WL 992098, at *4 (W.D. Va. Mar. 14, 2014)

(holding ALJ erred in giving non-treating consultative examiner controlling weight) (citing SSR

96-2p, 1996 WL 374188, at *2 (July 2, 1996) ("[O]pinions from sources other than treating

sources can never be entitled to 'controlling weight.'")).  A non-treating source "means a

physician, psychologist, or other acceptable medical source who has examined you but does not

have, or did not have, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502.  Dr.

Ward saw Mr. Castillo only once on January 15, 2013 to do a current examination for DWS.

(Tr. 302, 315.)  After that, Mr. Castillo contacted Dr. Ward only once more to follow up on his

paperwork.  (Tr. 311.)  These facts show Dr. Ward served as Mr. Castillo's examining doctor,

not as his treating doctor as Mr. Castillo asserts.  Therefore, the ALJ could not have accorded Dr.

Ward's opinion controlling weight.

      The ALJ gave Dr. Ward's opinion little weight for two reasons:  (1) Dr. Ward's notes do

not support his opinion and (2) Mr. Castillo's statements show he can do more than what Dr.

Ward opined he could.  (Tr. 25.)  Mr. Castillo argues that objective evidence in the record

supports Dr. Ward's opinion, his own testimony is consistent with Dr. Ward's opinion, and Dr. Ward's role as a consultative examiner for DWS should give the opinion greater weight.  (Pl.'s Opening Br. 8, ECF No. 9.)  The undersigned disagrees because substantial evidence supports the ALJ's evaluation of Dr. Ward's opinion.

The ALJ noted that despite Dr. Ward's opinion that Mr. Castillo's "spinal arthritis" and possible "asthma" effectively preclude all work activities, his notes do not provide much support for that opinion.  (Tr. 25.)  The ALJ correctly lists the relevant evidence provided in Dr. Ward's notes:  "the claimant had some breathing troubles after walking down the hall and back"; "his weight was limiting his ability to squat, [but] he was able to walk a few steps on his toes and heels"; "[d]espite some pain to palpation in his lumbar spine and musculature, he had negative straight leg raises with no evidence of edema."  (Tr. 25, 305.)  These notes suggest Mr. Castillo can still work despite his limitations.  Furthermore, as discussed above, contrary to Mr. Castillo's argument, his X-rays do not support impairment of the lower back.  Thus, Dr. Ward's opinion regarding Mr. Castillo's lower back impairment and resultant limitations has no medical evidence to support it.  (*See tr. 302-303* (analyzing Mr. Castillo's lower back problems).)  Neither does Mr. Castillo's August 28, 2012 X-ray support Dr. Ward's opinion regarding asthma because the results showed, at most, mild limitations.  (Tr. 274, 302.)

The ALJ also stated Mr. Castillo's testimony regarding his abilities show he can do more than what Dr. Ward opined.  (Tr. 25.)  The ALJ described that testimony earlier in the Decision.  (Tr. 23–24.)  Despite having problems dressing and bathing at times and his complaints about shortness of breath, Mr. Castillo makes his own meals, does household chores, mows the lawn, uses public transportation, shops for his own food and personal items, spends time with his family doing activities, and fishes.  (Tr. 24, 40–41, 152–54, 189, 326.)  Mr. Castillo also reports

-16-

he has no problem sitting and can lift up to thirty pounds and walk two blocks without resting

despite his conditions.  (Tr. 23, 45, 155.)  These statements contradict Dr. Ward's opinion that

Mr. Castillo's limitations would effectively preclude him from all work activities.

  That DWS asked Dr. Ward to do a consultative examination on Mr. Castillo does not

require the ALJ to give Dr. Ward's opinion more weight.  An ALJ evaluates opinion evidence

used by other agencies in the same manner as any other opinion evidence in the record.  SSR 06-

03p, 2006 WL 2329939, at *7 (Aug. 9, 2006).  Although the ALJ must consider every factor in

weighing a medical opinion, he need not apply all the factors in weighing a medical opinion.  *See*

*Oldham*, 509 F.3d at 1258 (pointing out that "the Commissioner has recognized, '[n]ot every

factor for weighing opinion evidence will apply in every case'" (alteration in original) (quoting

SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006))).  Most importantly, as long as

substantive evidence supports the ALJ's evaluation, the court must affirm it.  42 U.S.C § 405 (g).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's findings from being supported by substantial evidence," and the court

may not "displace the agenc[y's] choice between two fairly conflicting views, even though the

court would justifiably have made a different choice had the matter been before it de novo."

*Lax*, 489 F.3d at 1084 (alteration in original) (quoting *Zoltanski*, 372 F.3d at 1200).  As

discussed above, substantial evidence does support the ALJ's evaluation of Dr. Ward's opinion.

  Mr. Castillo also argues the ALJ erred by giving significant weight to the opinions of Rox

Burkett, M.D., and David O. Peterson, M.D., the SSA's examiners, but not to Dr. Ward's

opinion when Dr. Burkett and Dr. Peterson had less evidentiary support for their opinions

because they did not examine Mr. Castillo.  (Pl.'s Reply Br. 3, 7, ECF No. 17.)  The ALJ gave

Dr. Burkett's and Dr. Peterson's opinions significant weight because the record supports their

findings that Mr. Castillo could perform the full range of light work.  (Tr. 25.)  Mr. Castillo

asserts that the ALJ wrongly assumed these doctors had physically examined Mr. Castillo.  (Pl.'s

Reply Br. 7, ECF No. 17.)  The Decision does not bear out this assertion.  (Tr. 25.)  Mr.

Castillo's collective statements support a finding that he can lift twenty pounds occasionally and

ten pounds frequently and sit most of the time with some pushing and pulling of his arms and

legs.  (*See, e.g.,* tr. 45, 155.)  Mr. Castillo's ability to do those things means he can do the full

range of light work.  *See* 20 C.F.R. § 404.1567(b) (describing the requirements for light work).

"In appropriate circumstances, opinions from State agency medical and psychological

consultants and other program physicians and psychologists may be entitled to greater weight

than the opinions of treating or examining sources."  SSR 96-6p, 1996 WL 374180, at *3 (July 2,

1996); *see Garcia v. Colvin*, No. 14-cv-00078-REB, 2015 WL 1326326, at *4 (D. Colo. Mar. 20,

2015) (holding ALJ properly gave non-examining state agency psychiatrist more weight than

consultative psychological examiner because state agency psychiatrist's opinion was more

consistent with the record as a whole).  Because substantial evidence in the record supports the

ALJ's finding Dr. Burkett's and Dr. Peterson's opinions supported by the record and not Dr.

Ward's opinion, the undersigned RECOMMENDS the District Court find the ALJ did not err in

assigning little weight to Dr. Ward's opinion.

### C.  RFC Consideration

Mr. Castillo argues the ALJ failed to support his RFC determination with substantial

evidence and that this failure partly stems from his improper evaluation of Dr. Ward's opinion.

(Pl's Opening Br. 2, 7, 9–11, ECF No. 9; Pl.'s Reply Br. 4–8, ECF No. 17.)

The RFC reflects the ability to do physical, mental, and other work activities despite

limitations from the claimant's impairments.  20 C.F.R. § 404.1545(a)(1).  In determining the

claimant's RFC, the ALJ considers all of the claimant's medically determinable impairments, including those considered not "severe." 20 C.F.R. § 404.1545(a)(2).

Because the undersigned has already recommended finding the ALJ did not err in his evaluation of Dr. Ward's opinion, that particular argument fails.

Mr. Castillo also argues the ALJ's error stems from failing to show Mr. Castillo can perform "substantially all" of the range of light work, including "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." (Pl.'s Reply Br. 5 (quoting 20 C.F.R. § 404.1567(b)), ECF No. 17.)  As discussed above, the ALJ's recitation of Mr. Castillo's statements about his daily living activities alone show Mr. Castillo can perform "substantially all" of the range of light work.  Additionally, although Mr. Castillo did not say "yes" to the ALJ's question of whether he could do light work, Mr. Castillo also did not say "no." (Tr. 48–49.)  His objection to the ALJ's question revolved around his lack of skills with a computer, not his lack of functional ability to do light work.  (Tr. 49.) Furthermore, even if the ALJ commented that the job of WalMart greeter seemed "pretty sedentary," (*id.*), that does not preclude the finding that Mr. Castillo could do more than sedentary work, i.e. light work.

Finally, Mr. Castillo argues the ALJ erred in how he handled Mr. Castillo's overhead lifting limitations and obesity.  (Pl.'s Reply Br. 6, ECF No. 17.)  The ALJ found Mr. Castillo's inability to reach overhead exaggerated because Mr. Castillo still fishes, a hobby that requires some degree of overhead reaching.  (Tr. 25.)  The ALJ also found Mr. Castillo's obesity had, at most, mild limitations on his ability to perform work.  (*See* tr. 23–25.)  The ALJ noted Mr. Castillo's weight "limit[ed] his ability to squat" but still allowed him "to walk a few steps on his toes and heels" and did not "result[] in any persisting limitations on his range of motion or motor

strength." (Tr. 25.)  The record contains substantial evidence to support these observations.  (Tr. 154, 224, 305, 326.)

Therefore, the undersigned RECOMMENDS the District Court find the ALJ did not err in determining Mr. Castillo had an RFC that allowed him to perform the full range of light work.

## V.  RECOMMENDATION

For the reasons set forth above, the undersigned RECOMMENDS the District Court affirm the Commissioner's decision.

The court will send copies of this Report and Recommendation to all parties, who are hereby notified of their right to object.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to object may constitute waiver of objections upon subsequent review.

DATED this 2d day of September, 2015.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge